UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| ACCENT COMFORT SERVICES, LLC | ) | |
| | ) | **Case No. 26-30097** |
| | ) | **Chapter 11** |
| | ) | |
| **Debtor.** | ) | |
| | ) | |

## PLAN OF REORGANIZATION
## PURSUANT TO § 1190 OF THE BANKRUPTCY CODE

Charlotte, North Carolina
This the 27 day of April 2026.

ESSEX RICHARDS, P.A.

*/s/ John C. Woodman*
John C. Woodman (NC Bar No. 42365)
1701 South Boulevard
Charlotte, North Carolina 28203
Tel: (704) 377-4300
Fax: (704) 372-1357
E-mail: jwoodman@essexrichards.com
*Counsel for the Debtor*

ACCENT COMFORT SERVICES, LLC

By: _____
Frank Celeste, Sr.

By: _____
Frank C. Celeste

VERSION 4

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | | |
|---|---|---|
| **ACCENT COMFORT SERVICES, LLC** | ) | |
| | ) | **Case No. 26-30097** |
| | ) | **Chapter 11** |
| | ) | |
| **Debtor.** | ) | |
| | ) | |

**PLAN OF REORGANIZATION
PURSUANT TO § 1190 OF THE BANKRUPTCY CODE**

The above-captioned debtor ACCENT COMFORT SERVICES, LLC (the "Debtor" or "Plan Proponent"), hereby submits this *Plan of Reorganization Pursuant to § 1190 of the Bankruptcy Code* pursuant to § 1190 under Title 11 of the United States Code, 11 U.S.C. § 101 et seq.

**BACKGROUND**

**Description and History of the Debtor's Business**

Formed December 30, 2004, the Debtor is a South Carolina limited liability company that operates as a heating, cooling, plumbing and electrical company providing residential and commercial heating, ventilation and air conditioning ("HVAC") services, including installation, maintenance, repair and system replacement..  The Debtor's principal business location is in Mecklenburg County, North Carolina.  The Debtor has two equity owners, Frank C. Celeste and Frank Celeste Sr.  The Debtor's prior equity owner was Daniel Mills who held 50% of the Debtor.

The Debtor commenced this Chapter 11 case to address a severe liquidity constraint resulting from a  prolonged period of increased competition within the HVAC industry preceding the Chapter 11 filing, which eroded the Debtor's profit margins to the point that its operating cash flow was strained.  The Debtor's liquidity position was further exacerbated by its use of  merchant cash advance ("MCA") financing, which imposed extraordinarily high effective costs of capital and daily or frequent repayment obligations tied to the Debtor's accounts receivable that severely limited its ability to meet its trade obligations and fund ongoing operations.  This Plan of Reorganization is designed to deleverage the Debtor's balance sheet and position the business for long-term viability in a competitive market environment.

**Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive on account of each of their claims at least as much under the Plan as such claim would receive in a hypothetical chapter 7 liquidation and that the Plan is "fair and equitable".  A liquidation analysis showing what creditors could expect to receive in a hypothetical chapter 7

1

liquidation is attached to the Plan as Exhibit A. To the extent that the Plan is not confirmed on a consensual basis under section 1191(a), the Debtor hereby notifies creditors that it intends to satisfy the "fair and equitable" requirements of cramdown and commit its disposable income as required under section 1191(b). The Debtor is projecting $605.12 in monthly disposable income.

**Ability to make future plan payments and operate without further reorganization.**

To confirm the Plan, the Debtor, as the plan proponent, must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate its business. The Debtor has provided projected financial information in Exhibit B. The Debtor is committing all disposable income generated from its business operations over a three-year period to pay Allowed Claim of creditors in accordance with the priority scheme provided for in Article 6 of the Plan.

**PLEASE TAKE NOTICE THAT THIS PLAN AFFECTS OR MODIFIES CERTAIN RIGHTS OF SECURED CREDITORS UNDER ARTICLE 9 OF THE UNIFORM COMMERCIAL CODE AS WELL AS COMMON LAW. CONSEQUENTLY, YOU SHOULD READ THIS PLAN IN ITS ENTIRETY.**

**YOU SHOULD CONSULT WITH YOUR ACCOUNTANT OR OTHER FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THE DEBTOR'S LIQUIDATION ANALYSIS OR FINANCIAL PROJECTIONS.**

**PLEASE TAKE FURTHER NOTICE THAT THIS PLAN CONTEMPLATES THE COMPROMISE OR SETTLEMENT OF CLAIMS OR CONTROVERSIES SUBJECT TO BANKRUPTCY RULE 9019.**

## ARTICLE 1
## <u>DEFINITIONS</u>

As used in this Chapter 11 Plan, the following terms shall have the respective meanings specified below:

1.1     *Administrative Claim.* Any cost or expense of administration of the Chapter 11 Case (a) required to be asserted by filing an application with the Bankruptcy Court on or before the Administrative Claim Bar Date, or (b) allowed under § 503(b) of the Bankruptcy Code, except to the extent the holder of such Claim agrees to be treated differently. Administrative Claims include, but are not limited to, (i) any actual and necessary expenses of preserving the Estate incurred during the Chapter 11 Case, (ii) any actual and necessary expenses of operating the Debtor' business incurred during the Chapter 11 Case, (iii) any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of their business as a Debtor in Possession, or for the acquisition or lease of property by, or for the rendition of services to, the Debtor, (iv) obligations pursuant to executory contracts assumed by the Debtor pursuant to an order of the Bankruptcy Court, (v) all Claims as provided by § 507(b) of the Bankruptcy Code, (vi) all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court, (vii) any Allowed Contingent Claims which are granted administrative priority status by Final Order of the Bankruptcy Court, and (viii) any fees or charges assessed against the Estate under Chapter 123 of Title 28, United States Code.

1.2     *Allowed Administrative Claim.* All or that portion of any Administrative Claim that is or has become an Allowed Claim.

1.3     *Allowed Claim.* Any Claim against the Debtor (i) proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claims against the Debtor individually or jointly or, if no proof of claim is filed, which has been or hereafter is listed by the Debtor in their Schedules, as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim), or (iii) any Claim as to which the Bankruptcy Court has entered a Final Order allowing the Claim. A Disputed Claim shall be an Allowed Claim if, and only to the extent that, a Final Order has been entered allowing such Disputed Claim. The term "Allowed," when used to modify a reference in this Plan to any Claim or class of Claims, shall mean a Claim (or any Claim in any such class) that is allowed (e.g., an Allowed Secured Claim is a Claim that has been Allowed to the extent of the value of any interest in property of the Estate securing such Claim), as determined by the Bankruptcy Court pursuant to § 506(a) of the Bankruptcy Code. Unless otherwise specified in this Plan or in the Final Order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include interest on the amount of such Claim from and after the Petition Date.

1.4     *Avoidance Action.* Any and all actions which a Debtor, Debtor in Possession, or other appropriate party in interest may assert on behalf of the Estate under the Bankruptcy Code, including actions pursuant to §§ 542, 543, 544, 545, 546, 547, 548, 549, 550, and/or 551 of the

3

Bankruptcy Code. As of the filing of this Plan, the Debtor refers parties to the Statement of Financial Affairs for parties that may initially be subject to an Avoidance Action.

1.5 **Bankruptcy Code.** The Bankruptcy Reform Act of 1978, as amended, and memorialized in Title 11 of the United States Code, 11 U.S.C. § 101 et seq.

1.6 **Bankruptcy Court.** The United States Bankruptcy Court for the Western District of North Carolina, having jurisdiction over the Chapter 11 Case.

1.7 **Bankruptcy Rules.** The Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

1.8 **Business Day.** Any day other than a Saturday, Sunday, or other day on which commercial banks in the State of North Carolina are authorized or required by law to close.

1.9 **Cash.** Cash and readily marketable securities or instruments including, without limitation, readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof, time certificates of deposit issued by any bank, and commercial paper.

1.10 **Chapter 11 Case.** The Debtor' bankruptcy case under Chapter 11 of the Bankruptcy Code which is pending before the Bankruptcy Court (Case No. 26-30097).

1.11 **Claim.** Any right to payment from the Estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Estate, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date.

1.12 **Class.** Means a classification of Allowed Claims for the purposes of treatment and distributions under this Plan.

1.13 **Confirmation Date.** The date upon which the Bankruptcy Court enters the Confirmation Order confirming this Plan.

1.14 **Confirmation Hearing.** The hearing before the Bankruptcy Court to consider confirmation of this Plan.

1.15 **Confirmation Order.** An order of the Bankruptcy Court, in form and substance satisfactory to the Debtor, confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.16 **Contingent Claim.** A Claim that is either contingent or unliquidated on or immediately before the Confirmation Date.

1.17 *Creditor.* Any Person that holds a Claim against the Estate.

1.18 *Debtor.* Refers to ACCENT COMFORT SERVICES, LLC

1.19 *Disputed Claim.* A Claim which is the subject of a timely, unresolved objection interposed by the Debtor or listed as disputed in the Debtor' schedules; provided, however, that the Bankruptcy Court may determine the amount of a Disputed Claim for purposes of allowance pursuant to § 502(c) of the Bankruptcy Code; provided, further, that the Debtor or Debtor, in their sole discretion, may elect to treat the portion of a Disputed Claim, if any, that is not in dispute as an Allowed Claim, with the disputed portion remaining a Disputed Claim.

1.20 *Discharge Order.* Any final non-appealable order entered by this Court.

1.21 *Disputed Claims Reserve.* The interest-bearing reserve account established by the Debtor pursuant to Article 9.3 of this Plan from which all cash distributions under the Plan shall be made with respect to all Disputed Claims.

1.22 *Effective Date.* The Business Day on which all of the conditions set forth in Article 11 of this Plan shall have been satisfied or waived.

1.23 *Estate.* The bankruptcy estate of the Debtor, including all interests in property that the Debtor holds.

1.24 *Equity Interest Holders.* Refers to Frank C. Celeste and Frank Celeste Sr..

1.25 *Final Order.* An order that is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing is pending.

1.26 *General Unsecured Claim.* Any Unsecured Claim, other than an Administrative Claim, Other Priority Claim, or a Priority Tax Claim. Allowed General Unsecured Claims include, without limitation, Allowed Unsecured Deficiency Claims, and any Claim in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim).

1.27 *Judgment.* A judgment that is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing is pending.

1.28 *Other Priority Claims.* Any Claim to the extent entitled to priority in payment under §§ 507(a)(2) through 507(a)(7) of the Bankruptcy Code.

1.29 *Person.* An individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government, governmental unit or any subdivision thereof or any other entity.

1.30 *Petition Date.* Refers to January 27, 2026, the date of the commencement of this Case.

5

1.31  **Plan.** This Chapter 11 Plan or, as it may be from time to time modified, amended or supplemented, together with any exhibits thereto.

1.32  **Priority Non-Tax Claim.** Any Claim arising prior to the Petition Date entitled to priority in payment under §§ 507(a)(1)-(a)(7) of the Bankruptcy Code.

1.33  **Priority Tax Claim.** Any Claim arising prior to the Petition Date entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.

1.34  **Pro Rata Share.** As of any certain date, with respect to any Allowed Claim in any Class, the proportionate share that such Allowed Claim bears to the aggregate amount of all Claims, including Disputed Claims, in such Class.

1.35  **Professional.**  Any attorney, accountant, appraiser, auctioneer, or other professional person retained and employed by the Estate in the Chapter 11 Case in accordance with §§ 327 and/or 328 of the Bankruptcy Code.

1.36  **Reorganized Debtor.** The Debtor following confirmation of this Plan.

1.37  **Schedules.** The Schedules of Assets and Liabilities, and any amendments thereto, filed by the Debtor in the Chapter 11 Case.

1.38  **Secured Claim.** A Claim to the extent of the value, of any interest in property of the Estate securing such Claim, as determined pursuant to § 506(a) or 1111(b) of the Bankruptcy Code. To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is an Unsecured Deficiency Claim unless, in any such case, the class of which such Claim is a part makes a valid and timely election under § 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

1.39  **Taxes.** All income, franchise, excise, sales, use, employment, withholding, property, payroll, and other taxes, assessments, and governmental charges, together with any interest, penalties, additions to tax, fines, and similar amounts relating thereto, imposed or collected by any federal, state, local, or foreign governmental authority.

1.40  **SubV Trustee.** Refers to Michael Martinez as the Subchapter V Trustee.

1.41  **Unsecured Claim.** A Claim not secured by a charge against or interest in property in which the Estate has an interest, including any Unsecured Deficiency Claim, and any Claim arising at any time under Bankruptcy Rule 3002(c)(3).

1.42  **Unsecured Deficiency Claim.** A Claim by a Creditor arising out of the same transaction as a Secured Claim to the extent that the value, as determined by the Bankruptcy Court pursuant to § 506(a) of the Bankruptcy Code, of such Creditor's interest in property of the Estate securing such Claim is less than the amount of the Claim which has the benefit of such security as provided by § 506(a) of the Bankruptcy Code.

1.43  **Other Definitions.** Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in this Plan but that is defined in the Bankruptcy Code or

Bankruptcy Rules shall have the meaning set forth therein. Wherever from the context it appears appropriate, each term stated in either of the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter. The words "herein," "hereof," "hereto," "hereunder," and others of similar inference refer to this Plan as a whole and not to any particular article, section, subsection, or clause contained in this Plan. The word "including" shall mean "including without limitation."

## ARTICLE 2
## PROVISIONS FOR PAYMENT OF ALLOWED ADMINISTRATIVE CLAIMS; ADMINISTRATIVE CLAIMS BAR DATE; PROVISIONS FOR PAYMENT OF ALLOWED PRIORITY TAX CLAIMS

2.1     *Administrative Claims Not Classified in this Plan*. Administrative Claims are not classified and are not entitled to vote to accept or reject the Plan. The treatment of and consideration to be received by holders of Allowed Administrative Claims pursuant to this Article 2 of the Plan shall be in full and complete satisfaction, settlement, release, and discharge of such Claims, provided however that the Debtor and/or the Estate reserve the right to object to any and all Administrative Claims. The Debtor's obligations in respect of such Allowed Administrative Claims shall be satisfied in accordance with the terms of this Plan.

2.2     *Administrative Claims Bar Date*. Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims, including all applications for final allowance of compensation and reimbursement of expenses of Professionals for services rendered or expenses incurred before the Confirmation Date, must be filed and served on the Debtor, SubV Trustee and the Bankruptcy Administrator for the Western District of North Carolina no later than **thirty (30) days after the Confirmation Date.** Any Person required to file and serve a request for payment of an Administrative Claim and who fails to timely file and serve such request, shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. The Administrative Claims Bar Date shall not apply to the expenses of Professionals or the Subchapter V Trustee for services rendered or expenses incurred after the Effective Date. Any fees incurred by the Debtor as it relates to avoidance actions shall not be subject to fee applications.

2.3     *Treatment of Administrative Claims*. Except to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid, in respect of such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Administrative Claim) as soon as practicable after the later of (a) the Effective Date; or, (b) the date on which such Claim becomes an Allowed Claim, or (c) at the Debtor's election, pursuant to section 1191(e).

2.4     *Subchapter V Trustee Administrative Expense Claim*. After the required Fee Applications pursuant to section 330 of the Bankruptcy Code, the Debtor proposes to compensate the Subchapter V Trustee as an administrative expense. Any and all carveouts subject to this Court's Cash Collateral Orders and held in trust may be applied to approved fees. Should there be any remaining administrative expense claim owed to the Subchapter V Trustee, as well as any

other administrative claim holder, the Debtor will pay those allowed administrative expenses from its disposable income prior to any payments being made to Allowed General Unsecured Claim(s).

2.5  ***Priority Unsecured Tax Claim(s).*** The holder of Allowed Priority Tax Claim shall be paid its Allowed Amount of its Allowed Priority Tax Claim(s), at the option of the Debtor: (a) in full, in Cash; or (b) in monthly installments to such Allowed Priority Tax Claim(s), together with interest at such rate as required by § 511 of the Bankruptcy Code or otherwise as required by § 1129(a)(9)(C) or (D) of the Bankruptcy Code, such that the full amount of each Allowed Priority Tax Claim(s). Should the Debtor elect monthly payments, the amount will be $574.88 which is amortized over fifty-four (54) months. The monthly payment will be deposited into a segregated account for Priority Unsecured Tax Claims. Payments for Allowed Priority Class Claimants will begin the first full month, that is 90 days after the Effective Date. The second payment will be made on or before April 2027. Each payment to be remitted to an Allowed Priority Tax Claims thereafter will be made in September and April of the respective years. Before the claims process, as of the Petition Date, the Debtor estimates the amount of the Allowed Priority Tax Claims is $31,044.01.[1]  Allowed Priority Class Claimants consists of the North Carolina Department of Revenue, and Internal Revenue Service. Allowed Priority Tax Claim is not impaired by the Plan and is deemed to have accepted the Plan. The holder of Allowed Priority Class Claimants is not entitled to vote to accept or reject the Plan.

## ARTICLE 3
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

For purposes of the Plan, Claims and Equity Interests are classified as follows:

Class 1 shall consist of ***Secured Claims***

Class 2 shall consist of ***General Unsecured Claims.***

Class 3 shall consist of ***Equity Interests of the Debtor.***

### *Class 1: Secured Claims*

Class 1 consists of the Allowed Secured Claims as scheduled on Exhibit C.  The Allowed Amount of each Allowed Secured Claim shall be as Debtor set forth in Exhibit C.

3.1.2  *Treatment.*

The holder of the Allowed Class 1 Claim shall be paid the Allowed Amount of its Allowed Secured Claim as set on Exhibit C. If provided for on Exhibit C, the holder of the Allowed Class 1 Claim shall retain its existing liens, privileges and encumbrances, which shall retain the same validity, priority and extent that existed on the Petition Date.  In the event Exhibit C does not

---

[1] Amount is derived from a review of the Debtor's schedules and supplemental proof of claims filed with the Claims Register.

provide that the holder of an Allowed Class 1 Claim shall retain its existing lien, said holder shall cancel its lien, encumbrance on or before the Effective Date.

**PLEASE TAKE NOTICE THAT THIS PLAN AFFECTS OR MODIFIES CERTAIN LIEN RIGHTS OF CREDITORS UNDER ARTICLE 9 OF THE UNIFORM COMMERCIAL CODE. CONSEQUENTLY, YOU SHOULD READ THIS PLAN IN ITS ENTIRETY. THIS PLAN RESOLVES CERTAIN LIEN RIGHTS OF THE DEBTOR AS WELL AS UCC-1 FINANCING STATEMENTS THAT PURPORTEDLY EVIDENCE A LIEN AGAINST THE DEBTOR'S ASSETS.**

**THIS PLAN SHOULD BE TREATED AS A CLAIM OBJECTION FOR THE PURPOSES OF VALUATION. FURTHERMORE, THIS PLAN SHOULD BE TREATED AS A MOTION TO VALUE ANY SECURED PARTY'S COLLATERAL PURSUANT TO SECTION 506(A).**

### 3.1.3 *Impairment and Voting.*

Class 1 is impaired by the Plan. The holder of Class 1 Claim(s) is entitled to vote to accept or reject the Plan.

### *Class 2: General Unsecured Creditors*

#### 3.2.1 *Classification.*

Class 2 consists of all Allowed General Unsecured Claim(s). The Debtor estimate that the amount of the Class 2 Claims is $2,772,238.22. [2]

#### 3.2.2 *Treatment.*

After the satisfaction of or provision for payment in full of Allowed Administrative Expense Claims and the Claims Deadline, the holders of the Allowed Class 2 Claims will receive distributions in an amount equal to their in the unsecured creditor pool amount of $2,772,238.22, provided however, after deducting disputed claims, the unsecured creditor pool amounts to $1,881,081.22 which equals a Pro Rata Share estimated to be 1.1%. The projected monthly payment is $605.12 for thirty-six months. Monthly payments will be escrowed into a designated account established by the Debtor and remitted by the Debtor to Allowed Class 2 Claims on a semi-annual basis. Monthly payments provided herein shall begin the first full month after the expiration of the Claims Deadline.

These Claims shall be treated as unsecured obligations of the Reorganized Debtor. Allowed General Unsecured Creditors shall be paid a Pro Rata share of the Reorganized Debtor's projected "disposable income" (as defined by section 1191(d) of the Bankruptcy Code). The timing and amount of any interim and final distribution will be at the discretion of the Debtor and subject to Articles 6 and 7 of this Plan.

---

[2] Amount is derived from a review of the Debtor's schedules and supplemental proof of claims filed with the Claims Register. Amount also factors in deficiencies associated with any unsecured claims related to secured claims on Exhibit C.

### 3.3.3 *Impairment and Voting.*

Class 2 is impaired by the Plan. The holders of Class 2 Claims are entitled to vote on the Plan.

### *Class 3: Equity Interests in the Debtor*

### 3.3.1 *Classification.*

Class 3 consists of the Equity Interests in the Debtor.

### 3.3.2 *Treatment*

The Equity Interests in the Debtor shall remain with the Debtor's insiders, Frank Celeste Sr. and Frank C. Celeste. No equity distribution shall be made to the holder of Equity Interests, unless and until all Allowed Claims with a higher priority have been paid in full.

### 3.3.3 *Impairment and Voting.*

Class 3 is impaired by the Plan. The holder of Class 3 Equity Interests is entitled to vote to accept or reject the Plan and is deemed to accept the same.

# ARTICLE 4
# ACCEPTANCE OR REJECTION OF THE PLAN

4.1 *Impaired Classes Vote.* Each holder of a Claim or Interest in an impaired Class receiving or retaining anything under this Plan is entitled to vote to accept or reject this Plan to the extent and in the manner provided in the Plan, the Bankruptcy Code and the Bankruptcy Rules, or in any voting procedures order.

4.2 *Acceptance by Impaired Classes of Claims.* Acceptance of this Plan by any Impaired Class entitled to vote shall be determined in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any voting procedures order entered by the Bankruptcy Court.

4.3 *Designation of Classes Entitled to Vote.* Classes 1 through 3 are impaired and the holders of Claims and Interests in those Classes are entitled to vote on the Plan.

4.4 *Nonconsensual Confirmation.* With respect to any impaired Class, including any Class of Claims or Interests created pursuant to amendments or modifications to this Plan, that does not accept the Plan, the Debtor will request that the Bankruptcy Court confirm this Plan based upon the Plan being fair and equitable under section 1191(b) of the Bankruptcy Code with respect

to any such non-accepting Class or Classes at the Confirmation Hearing, and the filing of this Plan shall constitute a motion for such relief.

4.5     *Modification.* The Debtor reserves the right to seek confirmation of a different plan of reorganization or liquidation if this Plan is not confirmed. The Debtor further reserves the right to alter, modify, amend, revoke, or withdraw the Plan as set forth herein for any purpose, including satisfying the requirements of cramdown under § 1193 of the Bankruptcy Code, at any time prior to the Confirmation Date, to the fullest extent permitted by § 1193 of the Bankruptcy Code.

## ARTICLE 5
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1     *Assumption or Rejection; Exceptions Thereto.* Each executory contract or unexpired lease of the Debtor that has not expired by its own terms before the Effective Date or previously been assumed or rejected by the Debtor pursuant to an order of the Bankruptcy Court, shall, as of the Effective Date pursuant to §§ 365 and 1123 of the Bankruptcy Code, be REJECTED by the Reorganized Debtor including, but not limited to, the pre-petition commercial lease with AF4 Charlotte Industrial, LLC, LLC and the Debtor's service agreements with Verizon Wireless, Service Titan, Schooley Mitchell and Dialpad, provided however, the Debtor's corporate documents are hereby ASSUMED. For the avoidance of doubt, to the extent that the Debtor's lease agreement with R&L Smith for the new commercial space is an agreement subject to section 5.1, the Debtor will perform pursuant to the terms of the contract.

Any executory contract or unexpired lease to be assumed pursuant to this Section 5.1 of the Plan shall be and hereby is assumed by the Reorganized Debtor as of the Effective Date and shall be fully enforceable by the Debtor or the Reorganized Debtor in accordance with its terms, including all written modifications, amendments, supplements of such assumed executory contract or unexpired lease and, as with respect to executory contracts or unexpired leases that relate to real property, shall include all written agreements and leases appurtenant to the premises, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easements, and any other interests in real property or rights *in rem* related to such premises.

5.2     *Effect of Confirmation Order on Executory Contracts and Unexpired Leases.* Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of any assumptions pursuant to § 365(a) and 1123(b)(2) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtor, their estate, and all parties in interest. In addition, the Confirmation Order shall constitute a finding of fact and conclusion of law that (i) there are no defaults of the Debtor, no Cure Payments owing (including that there is no compensation due for any actual pecuniary loss), (ii) there is adequate assurance of future performance with respect to each such assumed executory contract or unexpired lease, (iii) such assumption is in the best interest of the Debtor and the Estate, (iv) upon the Effective Date, the assumed executory contracts or unexpired leases constitute legal, valid, binding and enforceable contracts in accordance with the terms thereof, and (v) the non-debtor counter party to each assumed executory contract or unexpired lease is required to and

11

ordered to perform under and honor the terms of the assumed executory contract or unexpired lease. All executory contracts and unexpired leases assumed under the Plan or during the Chapter 11 Case constitute valid contracts and leases, as applicable, enforceable by the Debtor and/or the Reorganized Debtor against the non-debtor counterparties regardless of any cross-default or change of control provisions in any contracts or leases assumed or rejected under the Plan or during the Chapter 11 Case.

Likewise, subject to the occurrence of the Effective Date, the Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejection as of the Effective Date of all executory contracts and unexpired leases which are not assumed under this Plan, with the rejection effective as of the day before the Petition Date, as being burdensome and not in the best interest of the Estate.

5.3     **Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.** Any Claims for damages arising from the rejection of an executory contract or unexpired lease under this Plan must be filed within thirty (30) days after the Confirmation Date or such Claims will be forever barred and unenforceable against the Debtor, the Reorganized Debtor, and the Estate, in which case the holder of any such time-barred Claimshall not receive any distributions under the Plan on account of such Claim.

## ARTICLE 6
## DISTRIBUTIONS UNDER THE PLAN

6.1     **Distributions Under the Plan.** All distributions to the holders of Allowed Claims that are required under this Plan is subject to the provisions in Section 9.3 of this Plan. Distributions to be made on a distribution date shall be deemed actually made on the Distribution Date if made either (a) on the Distribution Date or (b) as soon as practicable thereafter. If any litigation now pending is resolved by Final Order or settlement, and the Debtor or Estate is ordered to pay any sums to the successful litigant, then such party shall become a creditor, and shall share in distributions to the appropriate Class. Whenever any distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without the accrual of any interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due. If an Allowed Claim does not have a specific due date, the distribution shall be made timely as long as the distribution was made during the applicable month, quarter or year associated with the Allowed Claim.

6.2     **Delivery of Distributions.** Distributions to a holder of an Allowed Claim shall be made at the address of such holder as indicated in the Debtor's records or the address on the proof of claim filed with the Bankruptcy Court. In the event that any such distribution is returned as undeliverable, the Debtor shall use reasonable efforts to determine the current address of the applicable holder, and no distribution to such holder shall be made unless and until the Debtor have determined such then current address, provided however, that if any distribution remains unclaimed after the first anniversary after distribution, such distribution shall be deemed unclaimed property pursuant to § 347(b) of the Bankruptcy Code and shall become vested in the Estate. In such event, the Claim holder for such distribution shall no longer be deemed to have an Allowed Claim without further order of this Court, and such holder shall be deemed to have waived its

12

rights to such distribution under this Plan pursuant to § 1143 of the Bankruptcy Code, shall have no further claim or right thereto, and shall not participate in any further distributions under this Plan with respect to such Claim. Checks issued by the Debtor or Trustee in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof.

6.3     *Manner of Payment Under the Plan.*  At the option of the Debtor, any payment to be made under the Plan may be made by check or wire transfer from a domestic bank or as otherwise required by applicable agreement.

6.4     *No Fractional Distributions.*  No fractional dollars shall be distributed under the Plan. For purposes of distributions, Cash distributions shall be rounded up or down, as applicable, to the nearest whole dollar.

6.5     *Withholding and Reporting.*   The Debtor shall comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions shall be subject to such withholding and reporting requirements.

## ARTICLE 7
## PLAN PAYMENTS AND FUNDING THE PLAN

7.1     *Plan Payments.*  The Debtor shall make the plan payments as provided herein in accordance with Article 3 from operations of the Debtor.

7.2     *Sources of Funding.*  Distributions to holders of Allowed Claims will be made from available Cash, funded by the revenue generated through the Debtor's operations.  If an Allowed Claim does not have a specific due date, the distribution shall be made timely as long as the distribution was made during the applicable month, quarter or year associated with the Allowed Claim.

## ARTICLE 8
## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

8.1     *Plan Administrator/Disbursing Agent.*  In the event that the Plan is confirmed consensually amongst the parties, the Debtor will act as a Plan Administrator/Disbursing Agent for Plan payments provided in the Plan.  However, if the Plan is confirmed on a nonconsensual basis, the Trustee will operate as a Plan Administrator / Disbursing Agent and shall be entitled normal hourly rate for his services, which will reduce the proposed plan payment accordingly. Consequently, the Plan Administrator/Disbursing Agent will disburse Plan payments in accordance with Article 6 of this Plan.

8.2     *Authority to Act Following Confirmation Date.* Upon confirmation of this Plan, the Reorganized Debtor shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan including, without limitation, the execution and filing of all documents required or contemplated by this Plan.

8.3     *Status of Liens of Secured Tax Claims and Other Lien Claimants.* Unless otherwise provided in this Plan, or by Order of the Bankruptcy Court, on the Effective Date, all existing liens held by any Class or Classes on the Debtor' assets, during the term of payments under this Plan, shall retain the same validity, priority and extent that existed on the Petition Date, provided however, all other liens and encumbrances shall be deemed automatically canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule. Provided further, that upon full consummation of this Plan and the entry of the Debtor' discharge, all liens of any claimant provided for in the Plan will be released, cancelled and deemed to be null and void. Thirty days following the satisfaction of the Debtor's payments provided herein, each creditor holding a lien on the Debtor' assets shall file a notice of satisfaction with the appropriate authorities.

8.4     *Effectuating Documents and Further Transactions.* The Debtor, and to the extent necessary the Reorganized Debtor, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate, for and on behalf of the Estate to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

8.5     *Equity Interests Directors and Officers of the Reorganized Debtor.* Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, the initial directors and officers of the Reorganized Debtor shall be the directors and officers of the Debtor immediately prior to the Effective Date. Each such director and officer shall serve from and after the Effective Date until his or her successor is duly elected or appointed and qualified or until his or her earlier death, resignation or removal in accordance with the terms of the Certificate of Incorporation, Operating Agreement, Declaration and other governing documents of the Reorganized Debtor (as the same may be amended after the Effective Date) and applicable state law. The Debtor's principals Frank Celeste Sr. and Frank C. Celeste shall remain as the officer in charge of the day-to-day operations and shall retain his interest in the Reorganized Debtor.

## ARTICLE 9
## RESOLUTION OF DISPUTED CLAIMS

9.1     *Objections to Claims; Prosecution of Disputed Claims.* The Debtor shall have the right to object to the allowance, amount or classification of Claims asserted in the Chapter 11 Case, and such objections may be litigated to Final Order by the Debtor, or compromised and settled in accordance with the business judgment of the Debtor. Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Claims shall be filed no later than one hundred and twenty (120) days after the Effective Date, subject to any extensions granted pursuant to a further order of the Bankruptcy Court, which extensions may be obtained by the Debtor without notice upon ex *parte* motion (the "Claims Deadline"). THE ABSENCE OF AN OBJECTION TO A CLAIM PRIOR TO THE CONFIRMATION DATE, WHETHER AS TO A SCHEDULED OR FILED CLAIM, SHALL NOT BE DEEMED AN ACCEPTANCE OF THE CLAIM NOR A WAIVER OF THE RIGHT TO OBJECT TO THE CLAIM, AND THE HOLDER OF ANY SUCH CLAIM SHALL NOT BE ENTITLED TO ASSERT RELIANCE UPON THE ABSENCE OF AN

14

OBJECTION OR ANY IMPLIED ACCEPTANCE OF SUCH CLAIM WHEN VOTING TO ACCEPT OR REJECT THE PLAN.

9.2    **Estimation of Disputed Claims.**  The Debtor may at any time request that the Bankruptcy Court estimate for all purposes, including distributions under this Plan, any Disputed, contingent or unliquidated Claim pursuant to § 502(c) of the Bankruptcy Code whether or not the Debtor or the Estate have previously objected to such Claim. The Bankruptcy Court shall retain jurisdiction to estimate any such Claim at any time, including, without limitation, during the pendency of an appeal relating to such objection.

9.3    **No Distribution on Account of Disputed Claims and Interests.**  Notwithstanding anything else contained in this Plan, except with respect to any undisputed, non-contingent and liquidated portion of General Unsecured Claims, no distribution shall be due or made with respect to all or any portion of any Disputed, contingent, or unliquidated Claim until the Claim becomes an Allowed Claim by Final Order.  The Debtor shall set aside or reserve a portion of the consideration payable to the holders of Allowed Claims in a particular Class to be held in the trust account for the Debtor's counsel or disputed claims reserve account and for such Class in an amount sufficient to pay to the holders of all Disputed Claims in such Class the full distributions they may be entitled to if their respective Claims were ultimately to be allowed in full by Final Order.

9.4    **Disputed Claims Reserve.**  The Reorganized Debtor may establish, at its discretion, a reserve account for the purpose of any claims the Debtor should object to pursuant to this Plan.

## ARTICLE 10
## EFFECT OF CONFIRMATION OF PLAN

10.1    **Vesting of Assets and Retained Causes of Action.**  All assets of the Debtor and Debtor in Possession shall remain property of the Estate following confirmation of the Plan until closure of the Chapter 11 Case, unless ordered otherwise by the Bankruptcy Court after notice and a hearing. Upon closure of the Chapter 11 Case, all remaining property of the Estate shall vest in the Reorganized Debtor free and clear of any and all Claims, liens, interests, and other charges and/or encumbrances. The Reorganized Debtor may then own, use, acquire and dispose of its property free of the Bankruptcy Court's supervision. For the avoidance of doubt, following confirmation of the Plan the Debtor shall retain all rights and is authorized to commence and pursue, as it deems appropriate, any and all Estate Litigation Claims, Avoidance Actions, other claims, causes of action, rights, objections, and defenses, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Chapter 11 Case, and including but not limited to, the claims and causes of action specified in the Plan or in any Plan exhibit. Unless otherwise ordered by the Bankruptcy Court, requests for setoff against the Debtor's vested assets, must be filed and served on the Debtor, SubV Trustee and the Bankruptcy Administrator for the Western District of North Carolina no later than thirty (30) days after the Effective Date.

10.2    **Binding Effect.**  Subject to the occurrence of the Effective Date as set forth in

Article 11 of the Plan, on and after the occurrence of the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against the Debtor and such holder's successors and assigns, whether or not such holder's Claim is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

10.3   ***Discharge of the Debtor.***   The consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, discharge, release, and termination of all Claims of any nature whatsoever against the Debtor and the Estate. In the event that the Plan is confirmed pursuant to section 1191(b), the Debtor shall receive its discharge immediately after completion of all payments made as fixed by the Court. If the Debtor receives its discharge (the "Discharge Order"), the Debtor shall be deemed discharged and released from any and all Claims, including but not limited to demands and liabilities that arose before the date of the Discharge Order, and all debts of the kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under § 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under § 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has accepted this Plan provided however that the Debtor shall not receive their discharge until full consummation of the Plan.

For the avoidance of doubt, the Debtor shall be responsible only for (a) those payments and Distributions expressly provided for or due under this Plan and (b) Claims that are not canceled and discharged pursuant to specific and express provisions of this Plan, and then only to the extent and in the manner specifically and expressly provided in this Plan. All Entities are precluded and forever barred from asserting against the Debtor, the Reorganized Debtor, the Estate or the assets, properties, or Interests in or property of the Debtor of any nature whatsoever, any Claims based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases there for were known or existed prior to the Effective Date, except for (a) those payments and distributions expressly due under this Plan and (b) Claims, if any, that are not canceled and discharged under the Plan, but instead survive pursuant to specific and express provisions of this Plan.

10.4   ***Effect of Discharge.***

***Under Section 1191(a).***   The Confirmation Order shall be a judicial determination of discharge and termination of all liabilities of any and all Claims against the Debtor and the Estate, except as otherwise specifically provided in this Plan. Upon the entry of the Confirmation Order, as to every discharged Claim and other debt of the Debtor, the holder of such Claim or other debt of the Debtor shall be permanently enjoined and precluded from asserting against the Debtor, or against their assets or properties or any transferee thereof, any other or further Claim or other debt of the Debtor based upon any document, instrument, or act omission, transaction, or other activity of any kind or nature that occurred prior to the entry of the Confirmation Order except as expressly set forth in this Plan. In the event that, after entry of the Confirmation Order, any Person asserts, against the Debtor or their subsidiaries and/or affiliates, any right to payment or equitable remedy for breach of performance which gives rise to a right of payment, which right was not asserted prior to the entry of the Confirmation Order but is based on any act, fact, event, occurrence, or omission, by or relating to the Debtor as they existed before the entry of the Confirmation Order, and in the further event that such right is determined by the Bankruptcy Court (a) not to have been

16

discharged pursuant to the provisions of § § 1141 and 1192 of the Bankruptcy Code and this Plan, and (b) that such right may be asserted against the Debtor, then, in such circumstances the holder of such right shall be entitled to receive from the Debtor value equivalent to that such holder would have received if such right had been asserted against the Debtor before the Confirmation Date and only to the extent such right would have been an Allowed Claim. Nothing in this Article 10.4 shall have the effect of excepting from discharge any Claim that is or would be discharged pursuant to §§ 1141 and 1192 of the Bankruptcy Code or this Plan.

*Under Section 1191(b).* The Discharge Order shall be a judicial determination of discharge and termination of all liabilities of any and all Claims against the Debtor and the Estate, except as otherwise specifically provided in this Plan. Upon the entry of the Discharge Order, as to every discharged Claim and other debt of the Debtor, the holder of such Claim or other debt of the Debtor shall be permanently enjoined and precluded from asserting against the Debtor, or against their assets or properties or any transferee thereof, any other or further Claim or other debt of the Debtor based upon any document, instrument, or act omission, transaction, or other activity of any kind or nature that occurred prior to the entry of the Discharge Order except as expressly set forth in this Plan. In the event that, after entry of the Discharge Order, any Person asserts, against the Debtor or their subsidiaries and/or affiliates, any right to payment or equitable remedy for breach of performance which gives rise to a right of payment, which right was not asserted prior to the entry of the Discharge Order but is based on any act, fact, event, occurrence, or omission, by or relating to the Debtor as they existed before the entry of the Discharge Order, and in the further event that such right is determined by the Bankruptcy Court (a) not to have been discharged pursuant to the provisions of § § 1141 and 1192 of the Bankruptcy Code and this Plan, and (b) that such right may be asserted against the Debtor, then, in such circumstances the holder of such right shall be entitled to receive from the Debtor value equivalent to that such holder would have received if such right had been asserted against the Debtor before the Discharge Date and only to the extent such right would have been an Allowed Claim. Nothing in this Article 10.4 shall have the effect of excepting from discharge any Claim that is or would be discharged pursuant to §§ 1141 and 1192 of the Bankruptcy Code or this Plan.

10.5   *Indemnification Obligations.* Subject to the occurrence of the Effective Date as set forth in Article 11 of this Plan, the obligations of the Debtor to indemnify, reimburse or limit liability of any person who is serving or has served as one of the Debtor' employees or agents by reason of such person's prior or current service in such capacity as provided in the applicable articles of organization, operating agreements, partnership agreements, or bylaws, by statutory law or by written agreement, policies or procedures of or with the Debtor, shall be deemed to be and treated as executory contracts that are assumed by the Debtor pursuant to the Plan and § 365 of the Bankruptcy Code provided however, to the extent that the Debtor has indemnified any of its officers and directors directly or through its corporate charter and bylaws, said indemnification obligations are assumed and ratified upon the Effective Date.

10.6   *Injunction.* Except as otherwise expressly provided herein, and except with respect to enforcement of the Plan, all Entities who have held, hold or may hold Claims against the Debtor are permanently enjoined, from and after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Interest against

17

the Debtor or the Estate (ii) the enforcement, attachment, collection or recovery by any manner or means of any Judgment, award, decree or order against the Debtor or the Estate, with respect to any such Claim or Interest, (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtor, the Estate or any property or interest therein that formerly was property of the Estate with respect to any such Claim or Interest, (iv) with respect to any Claim or Interest, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor, the Estate, or against the property or interests in property of any of them, and (v) pursuing any Claim released under the terms of the Plan.

10.7   *Term of Certain Injunctions.*   Unless otherwise provided herein or in the Confirmation Order, all injunctions and/or stays provided for in, or in connection with, this Chapter 11 Case, whether pursuant to the provisions of the Bankruptcy Code, the Plan, or other applicable law, in existence on the Confirmation Date, shall remain in full force and effect through the Effective Date and thereafter including, but not limited to, the automatic stay provided by section 362 of the Bankruptcy Code; *provided that* any holder of an Allowed Secured Claim or Allowed Priority Claim shall not be enjoined nor prohibited from exercising its *in rem* rights as to such collateral under applicable state law following occurrence of the Effective Date, provided that such Creditor first gives the Reorganized Debtor thirty (30) days' written notice, pursuant to section 12.1 of this Plan, of such default and opportunity to cure the same. In addition, on and after the Confirmation Date, the Debtor may seek such further orders as it deems necessary or appropriate to preserve the *status quo* during the time between the Confirmation Date and the Effective Date.

10.8   *Preservation of All Causes of Action Not Expressly Settled or Released.*   For the avoidance of doubt, and without limiting or restricting any other provisions of this Plan, including but not limited to Article 10.1 "Vesting of Assets and Retained Causes of Action," unless a Claim or Cause of Action against a Creditor or other Entity is expressly and specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, the Debtor expressly reserves such claim or Cause of Action for adjudication or pursuit by the Debtor and/or the Estate after the Confirmation Date, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation Date or Effective Date of the Plan based on the Plan, the Confirmation Order or otherwise.   The Debtor expressly reserves, and the Debtor shall be authorized to exercise, the right to pursue or adopt any claims (and any defenses) or Causes of Action of the Debtor, as trustees for or on behalf of the Creditors, not specifically and expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order against any Entity, including, without limitation, the plaintiffs or codefendants in any lawsuits. For the avoidance of doubt and out of an abundance of caution, the Debtor shall be a representative of the Estate appointed for the purposes of pursuing any and all such claims and Causes of Action under 11 U.S.C. § 1123(b)(3)(B).

Any Entity to whom the Debtor may have incurred an obligation (whether on account of services, purchase or sale of goods, tort, breach of contract or otherwise), or who has received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, their related entities or affiliates, or leased equipment or property from

18

the Debtor, should assume that such obligation, transfer, or transaction may be reviewed by the Debtor subsequent to the Effective Date and may, to the extent not theretofore specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, be the subject of an action or claim or demand after the Effective Date, whether or not (a) such Entity has filed a proof of claim against the Debtor in the Chapter 11 Case, (b) such Entity's proof of claim has been objected to, (c) such Entity's Claim was included in the Debtor' Schedules, or (d) such Entity's scheduled Claim has been objected to by the Debtor or has been identified by the Debtor as disputed, contingent, or unliquidated.

10.9   *Exculpation*. To the fullest extent permitted by § 1125(e) of the Bankruptcy Code, when acting in good faith and in compliance with the applicable provisions of the Bankruptcy Code, the Debtor, the Estate, and their respective members, officers, directors, employees, representatives, attorneys, appointed professionals, counsel, or agents shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of securities in connection with the pursuit of confirmation of the Plan. Nothing contained herein shall expand the provision of § 1125(e) of the Bankruptcy Code.

10.10   *No Successor Liability or Alter Ego.* Except as otherwise specifically provided in the Plan or the Confirmation Order, neither the Debtor, the Estate nor the related entities will have any responsibilities, pursuant to the Plan or otherwise, for any liabilities or obligations of the Debtor or any of the Debtor' past or present affiliates or subsidiaries relating to or arising out of the operations of or assets of the Debtor or any of the Debtor' past or present subsidiaries or affiliates, whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Effective Date. Neither the Debtor, the Estate, the Reorganizing Debtor, nor the Debtor' related entities shall have any successor or transferee liability of any kind or character, for any Claims; provided however, that the Estate shall remain subject to the obligations for the payments specifically and expressly provided, and solely in the manner stated, in the Plan.

# ARTICLE 11
## THE EFFECTIVE DATE OF THE PLAN

11.1   *Conditions to Occurrence of Effective Date of Plan.* The "effective date of the plan," as used in § 1191 of the Bankruptcy Code, shall not occur until the "Effective Date" as defined in this Plan. The Effective Date shall occur within forty-five days from the entry of the Confirmation Order. The Debtor may file a Notice of Effective Date but is not required to do so.

11.2   *Substantial Consummation.* If the Plan is confirmed under section 1191(a), the Debtor will file its Notice of Substantial Consummation on or before its final payment to general unsecured creditors. If the Plan is confirmed under section 1191(b), the Debtor will file its Notice of Substantial Consummation after its final payment to general unsecured creditors.

# ARTICLE 12
## MISCELLANEOUS PROVISIONS

12.1   *Notice.* Any notice required or permitted to be provided to the Debtor under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight courier service, freight prepaid, addressed to counsel for the Debtor and the Debtor or, after confirmation of the Plan, the Reorganized Debtor at the following addresses:

Accent Comfort Services, LLC
c/o Frank Celeste Jr.
112 Exmore Rd. Suite 2B
Mooresville, NC 28117

-and -

ESSEX RICHARDS, P.A.
Attn: John C. Woodman
1701 South Boulevard
Charlotte, North Carolina 28203

12.2   *Headings.* The headings used in this Plan are inserted for convenience only and do not in any manner affect the construction of the provisions of this Plan.

12.3   *Governing Law.* Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of North Carolina, without giving effect to any conflicts of law principles thereof that would result in the application of the laws of any other jurisdiction, shall govern the construction of this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise expressly provided in such instruments, agreements, or documents.

12.4   *Exemption from Transfer Taxes.* Pursuant to § 1146(a) of the Bankruptcy Code, to the extent applicable, the issuance, transfer, or exchange of any securities under this Plan, the making or delivery of any mortgage, deed of trust, other security interest, or other instrument of transfer under, in furtherance of, or in connection with this Plan, shall be exempt from all taxes as provided in such section of the Bankruptcy Code.

12.5   *Further Authorizations.* The Debtor and after the Confirmation Date, the Reorganized Debtor, may seek such orders, judgments, injunctions, and rulings they deem necessary or useful to carry out the intention and purpose of, and to give full effect to, the provisions of this Plan.

12.6   *Successors and Assigns.* The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor or assign of such Entity.

12.7   *Modification and Amendment of Plan.* Subject to § 1193 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3019, this Plan may be amended or modified by the Debtor and/or the Estate.

20

12.8 *Additional Documents*. The Debtor and Reorganized Debtor have the authority, after direction from the Debtor and/or the Estate, to take any and all actions and execute (and perform) any agreements and documents as the Debtor deem necessary or appropriate in its reasonable discretion to effectuate and further evidence the terms and conditions of this Plan.

12.9 *Remedies*. Subject to Section 10.7 of this Plan and/or any order confirming this Plan, and as required by section 1191(c)(3)(B), the remedies available to creditors holding an Allowed Claim for breach of the Plan shall be to: (i) bring an action to enforce the Plan in any court of competent jurisdiction including but not limited to the respective state court remedies and/or a breach of contract claim for the terms provided for under this Plan; (ii) file a Notice of Default in this Court followed by a Motion requesting liquidation of certain assets to cure default; (iii) exercise their in rem rights as to their collateral under applicable state law following occurrence of the Effective Date, provided that such creditors holding an Allowed Claim first gives the Reorganized Debtor thirty (30) days' written notice, pursuant to section 12.1 of this Plan, of such default and right to cure the same; and (iv) file a motion seeking to set aside any confirmation order concerning this Plan or case dismissal.

12.10 *Employment*. Subject to the Debtor's ordinary course of business as well as the terms provided herein, any insiders, and Equity Interest Holders previously employed by the Debtor may continue to be employed by the Debtor under the same rates, compensation that occurred prior to the Petition Date. Pursuant to section 1129(a)(5), the Debtor discloses that the individual insiders to be employed by the Debtor are:

(i)      Frank Celeste Sr. ("Senior")
(ii)     Frank C. Celeste ("Junior")
(iii)    Nikolas Celeste (Son to Junior)
(iv)    Stacie Celeste (Wife to Junior)
(v)     Kathy Celese (Wife to Senior)

12.11 *Subchapter V Trustee*. The Subchapter V trustee shall be discharged from his/her official duties upon the entry of an Order of this Court, provided nothing herein shall prevent the Subchapter V Trustee from seeking discharge upon the Plan being confirmed under section 1191(a) at an earlier date.

## ARTICLE 13
## RETENTION OF JURISDICTION

Pursuant to §§ 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and have jurisdiction to the fullest extent provided by applicable law over any matter arising under the Bankruptcy Code or arising in or related to the Chapter 11 Case or this Plan, including, without limitation, the following:

13.1 *Executory Contracts and Unexpired Leases.* To hear and determine any and all motions or applications (i) for the assumption, assumption and assignment or rejection of

21

executory contracts or unexpired leases to which the Debtor are a party or with respect to which the Estate may be liable, (ii) to review and determine all cure payments under any such assumed executory contract or unexpired lease, and (iii) to review and determine any Claims resulting from the rejection of any executory contract or unexpired lease.

13.2 **_Causes of Action._** To determine any and all Causes of Action, including all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by or on behalf of the Estate.

13.3 **_Disputed Claims, Contingent Claims and Unliquidated Claims Allowance/Disallowance._** To hear and determine any objections to the allowance of Claims or Interests (other than Claims that are Allowed pursuant to the Plan or by prior, Final Order of the Bankruptcy Court), including but not limited to any objections to the classification of any Claim, and to allow or disallow any contingent Claim, Disputed Claim, unliquidated Claim, contingent Interest, disputed Interest in whole or in part, and to determine any and all disputes among Creditors and holders of Interests with respect to their Claims and Interests.

13.4 **_Enforcement/Modification of Plan._**

13.4.1 To hear and determine any requests to modify this Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order.

13.4.2 To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with this Plan or any other Plan documents or their interpretation, implementation, enforcement, or consummation.

13.4.3 To hear and determine other matters that may be set forth in the Plan and Confirmation Order or that relate to any transaction required or contemplated by the Plan.

13.4.4 To hear and determine any other matters related hereto, including matters related to the implementation and enforcement of the Plan, the Confirmation Order, and all orders entered by the Bankruptcy Court in this Chapter 11 Case.

13.4.5 To hear and determine any issue relating to distributions under the Plan.

13.4.6 To enter such orders as are necessary to implement and enforce the injunctions described herein, including orders extending the protections afforded under § 105 of the Bankruptcy Code.

13.4.7 To issue such orders in aid of execution of this Plan to the fullest extent authorized or contemplated by § 1193 of the Bankruptcy Code.

13.5 **_Compensation of Professionals._** To hear and determine all applications for allowances of compensation and reimbursement of expenses of Professionals, any other fees and

22

expenses authorized to be paid or reimbursed under this Plan, and to approve the reasonableness of any payments made or to be made as provided in § 1129(a)(4) of the Bankruptcy Code.

13.6    **Settlements.**   To the extent that Bankruptcy Court approval is required, to consider and act on any compromise and settlement of any Claim against or Cause of Action by the Debtor or the Estate.  To the extent that this Plan resolves any claims against the Debtor or its Estate, any confirmation order entered by the Bankruptcy Court shall be deemed an order entered under Bankruptcy Rule 9019 as it relates to any compromises or settlements contained herein.

13.7    **Taxes.**   To hear and determine matters concerning ERC refund, state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtor may be liable, directly or indirectly, in accordance with §§ 346, 505, and 1146 of the Bankruptcy Code.

13.8    **Section 506(b) Claims.**   To determine the amounts, if any, of the reasonable fees, costs and other charges payable under § 506(b) of the Bankruptcy Code.

13.9    **Specific Purposes.**   To hear and determine such other matters as may be provided for in the Confirmation Order or may be appropriate under applicable law.

13.10   **Final Decrees.**   To enter an order or final decree closing the Chapter 11 Case.

**[SIGNATURES ON FOLLOWING PAGE]**

23

Charlotte, North Carolina
This the _27_ day of April 2026.

ESSEX RICHARDS, P.A.

_/s/ John C. Woodman_
John C. Woodman (NC Bar No. 42365)
1701 South Boulevard
Charlotte, North Carolina 28203
Tel: (704) 377-4300
Fax:  (704) 372-1357
E-mail: jwoodman@essexrichards.com
*Counsel for the Debtor*

ACCENT COMFORT SERVICES, LLC

By: _____
Frank Celeste, Sr.

By: _____
Frank C. Celeste

24

# EXHIBIT A

## LIQUIDATION ANALYSIS

## BEST INTERESTS TEST - LIQUIDATION ANALYSIS

Notwithstanding acceptance of the Plan in accordance with § 1126 of the Bankruptcy Code, the Court must find that each member of an impaired class of creditors, if any, has each accepted the Plan, or will receive or retain property of a value, as of the Effective Date of the Plan, that is not less than the amount such creditor or interest holder would have received or retained if the Estate was liquidated under Chapter 7 of the Bankruptcy Code. The Debtor and the Estate believe that the Plan complies with this "best interests" test.

Conversion of the Chapter 11 Case to a case administered under Chapter 7 of the Bankruptcy Code, followed by liquidation, would involve greater expense and risk than the reorganization contemplated by the Plan. Furthermore, the creditors would receive far less than they would realize in this Chapter 11 Plan.

When analyzing the Debtor's proposed plan, creditors should consider the amount of such liens, as well as the likely sale values of the Debtor's encumbered and unencumbered property and the recovery thereof.

If this case were converted to a Chapter 7 proceeding, the Debtor anticipates that the trustee would not be unable to recover the fair market value of their assets (given the distressed nature of a Chapter 7 liquidation). Instead, a trustee would likely be able to recover only the liquidation values of the assets. The trustee would likely surrender those properties in which there is no equity to the applicable secured creditors, and liquidate only that property with value over and above the amount of any related liens. Taking into account the statutorily allowed trustee commissions and related sale expenses, the holders of Allowed Secured Claims would receive less than the fair market value of their collateral, and General Unsecured Creditors should expect to receive no distributions whatsoever.

Assuming the assets of the Estate with equity were sold at their liquidation values as shown above, the estimated sale expenses and deductions required before payments to unsecured creditors are summarized in the following table:

Thus, sale of the Debtor's assets in a hypothetical liquidation would yield no funds for distribution to unsecured creditors.

In contrast, under the proposed Plan, following the payment of priority claim holders, the Debtor will commit all of the projected disposable income at the figures set forth herein to fund payments to Admin Holders and Creditors over a three (3) year term. Following the claims process, administrative costs and expenses of the Debtor's Chapter 11 Case will be paid in full at the Effective Date, or thereafter as the Plan and/or administrative professionals agree with the Debtor. With respect to those properties the Debtor proposes to retain, if any, the affected secured creditors will be paid in full up to the value of their collateral in monthly payments with interest.

As shown in the disposable income projection in Exhibit B, the monthly amount available for distribution to unsecured creditors over the term of the Plan totals at least $605.12 monthly over thirty-six months. Thus, holders of Allowed General Unsecured Claims (in the estimated amount of $2,772,238.22) may expect to receive a 1.1% Pro Rata distribution, which would not be available in the liquidation scenario discussed above.

26

Therefore, confirmation of the Plan is preferable to liquidating the case under Chapter 7 of the Bankruptcy Code.  Creditors will receive more under the Plan than they would receive in a Chapter 7 liquidation. Accordingly, the Debtor and the Estate believe that confirmation of the Plan is in the best interests of Creditors and fully complies with the statutory requirements of the Bankruptcy Code.

## LIQUIDATION ANALYSIS

| Assets | Gross | Lien | % Realizable | Amount Realizable |
|---|---|---|---|---|
| Bank Accounts | $14,545.23 | No | 100% | $14,545.23 |
| Deposits | $5,000.00 | Yes | 0% | $0.00 |
| Inventory | $51,326.00 | Yes | 0% | $0.00 |
| Trucks Trailers Machinery | $212,737.00 | Yes | 0% | $0.00 |
| Furniture | $2,555.00 | Yes | 10% | $255.50 |
| Accounts Receivable | $48,202.15 | Yes | 25% | $12,050.54 |
| Intangibles | $20.00 | No | 100% | $0.00 |
| 2019 Chevy Express Van – Salvaged Title | $1,500 | No | 100% | $1,500.00 |
| Total Realizable Assets: | | | | $19,011.99 |
| | | | | |
| Liabilities | | | | |
| | | | | |
| Secured Debt | | | | $234,588.27 |
| Priority Claims | | | | $31,044.01 |
| | | | | |
| Liquidation Costs | | | | |
| | | | | |
| Trustee's Commission (5%) | | | | $950.59 |
| Ch. 7 Admin. Fees | | | | $20,000.00 |
| Ch. 11 Admin Claims (est.) | | | | $50,000.00 |
| | | | | |
| Total Liabilities: | | | | $355,594.86 |
| Realizable Assets Net Liabilities: | | | | $0.00 |
| | | | | |
| General Unsecured Claims: | | | | $2,772,238.22 |
| | | | | |
| Available Recovery in a Liquidation: | | | | $0.00 |
| | | | | |

27

**EXHIBIT B**

FINANCIAL INFORMATION AND PROJECTIONS

| | | Yearly Total | | Monthly |
|---|---|---|---|---|
| **Accent Sales** | Actuals | $3,280,000.00 | | $273,333.33 |
| **Memberships** | | | | |
| **Home Warranty** | | | | |
| **Total Income** | | $3,280,000.00 | | $273,333.33 |
| | | | | |
| **LABOR EXPENSES** | | | | |
| Field Labor | 18% of sales | $623,200 | | $51,933 |
| Office Labor | kathy | $230,000 | | $19,167 |
| Supervisor labor | Sr, Jr, Jill | $310,000 | | $25,833 |
| Sales labor | Tim and Julie | $135,000 | | $11,250 |
| Sales 1099 | Dan, misc | $78,000 | | $6,500 |
| Health Insurance | Tim only | $15,000 | | $1,250 |
| Eyecare | Ameritas | $1,450 | | $121 |
| Dental Insurance | Delta dental | $6,000 | | $500 |
| Partner Life insurance | John Handcock, American National For Dan | $12,360 | | $1,030 |
| Employee Life insurance | For employees | $4,272 | | $356 |
| Incentives | $25 for contract sales | $5,000 | | $417 |
| Comfort specialist | Commission sales 1099 | $80,000 | | $6,667 |
| Sales Incentives | Bonus monies | $15,000 | | $1,250 |
| IRA | same as last year | $16,000 | | $1,333 |
| Uniforms | We purchase in 2026 | $7,500 | | $625 |
| **Material and Equipment** | | | | |
| Material and Equipment | 34% of sales YEAR OVER YEAR | $1,115,200 | | $92,933 |
| Homeowner Damage Repair | Wag same as last year | $1,550 | | $129 |
| Equipment Rental | 5 year average | $8,000 | | $667 |
| Licenses | Same as 2025 | $592 | | $49 |
| **Vehicle Expenses** | | | | |
| Vehicle Payments | Per Chapter V agree | | | |
| Fuel | Mileage and truck count | $80,000 | | $6,667 |
| Vehicle Insurance | Combined with liability insurance | $60,400 | | $5,033 |
| Vehicle Maintenance | Raised over last year to incl 7 windshield | $25,650 | | $2,138 |
| Property Taxes | Trucks at registration | $4,000 | | $333 |
| **Business Services and Expenses** | | | | |
| Permits | same as last year | $11,000 | | $917 |
| Accountant Services | Based on last year | $8,000 | | $667 |
| Bookkeeping | Bookkeeping | $20,000 | | $1,667 |
| **Marketing/Sales Expenses** | | | | |
| Marketing | install sign,door hangerswordjack | $15,000 | | $1,250 |
| PRAXIS | operations training | $40,000 | | $3,333 |
| Meals | On a diet | $3,358 | | $280 |
| Marketing updates | Wraps $4000,Marketing material | $35,000 | | $2,917 |
| **Office Space Expenses** | | | | |
| Charges | Mooresville lease | $8,750 | | $729 |
| Rent | Mooresville lease and storage shed | $42,504 | | $3,542 |
| Utilities | elect, internet, gas for building | $4,800 | | $400 |
| **Banking Expenses** | | | | |
| Credit Card Fees | I used 2% of total sales was 70,000 last year | $65,600 | | $5,467 |
| Charges | Reduce down by $4400 | $5,000 | | $417 |
| Payroll Process | | $7,800 | | $650 |
| **General Business Expenses** | | | | |
| Business Insurance | combined with auto policy for a 75,452 combined total | $15,100 | | $1,258 |
| Cellular Phones | new spectrum service cancelling verizon | $14,000 | | $1,167 |
| Office Phone | | $4,000 | | $333 |
| Computer Repair | New computers, upgrades in new office | $6,000 | | $500 |
| Substriptions/Dues | BNI $3550 Jrs lic | $5,250 | | $438 |
| Software | QB,Rt Works, HCP,micrsoft, apple, etc | $24,000 | | $2,000 |
| Office Supplies | | $5,000 | | $417 |
| Postage & Delivery | | $500 | | $42 |
| Drawings | | $1,000 | | $83 |
| | | | | |
| | Total sales | $3,280,000 | | $273,333 |
| | Total expenses | $3,175,835 | | $264,653 |
| | Profit | $104,165 | | $8,680 |
| | | | | |
| | Priority | | | $574.88 |
| | Secured | | | $5,500.00 |
| | Admin | | | $2,000.00 |
| | | | | |
| | PDI | | | $605.12 |

**EXHIBIT C**

SECURED CREDITOR TREATMENT

# EXHIBIT C - SECURED CREDITOR TREATMENT

| LIST | MODEL | VIN number | CREDITOR | Set Amount | DEFICIENCY | TREATMENT |
|---|---|---|---|---|---|---|
| Cash / AR / Furniture | | | Pinnacle Bank | $26,851.27 | Yes | Claimant shall be paid the Allowed Amount of its Set Allowed Secured Claim provided the Debtor will receive credit for any payments made during the case. Monthly payments will be in the amount of $512.89 principal and interest at 5.5% per annum. This monthly payment will be made monthly for sixty (60) consecutive months.<br><br>The holder of the Allowed claim herein shall retain its existing liens, privileges and encumbrances, at the value provided for in this Plan, but shall retain the same validity, priority and extent that existed on the Petition Date.<br><br>Payments for Allowed Class 2 Claimants will begin the first full month, that is 30 days after the Claims Deadline. |
| Schedule A/B 47.3 | 2019 Ram Promaster 2500 | 5626 | Chrysler | $7,000.00 | Yes | Claimant shall be paid the Allowed Amount of its Set Allowed Secured Claim provided the Debtor will receive credit for any payments made during the case. Monthly payments will be in the amount of $114.37 principal and interest at 5.5% per annum. This monthly payment will be made monthly for seventy-two (72) consecutive months.<br><br>The holder of the Allowed claim herein shall retain its existing liens, privileges and encumbrances, at the value provided for in this Plan, but shall retain the same validity, priority and extent that existed on the Petition Date. In the event that the collateral is surrendered at any time, said surrender shall operate as a full and final satisfaction of any and all obligations that the Debtor and third parties may have with the Class 1 Claimant.<br><br>Payments for Allowed Class 1 Claimants will begin the first full month, that is 30 days after the Claims Deadline. |
| Schedule A/B 47.4 | 2019 Ram Promaster 2500 | 5624 | Chrysler | $7,000.00 | Yes | Claimant shall be paid the Allowed Amount of its Set Allowed Secured Claim provided the Debtor will receive credit for any payments made during the case. Monthly payments will be in the amount of $114.37 principal and interest at 5.5% per annum. This monthly payment will be made monthly for seventy-two (72) consecutive months.<br><br>The holder of the Allowed claim herein shall retain its existing liens, privileges and encumbrances, at the value provided for in this Plan, but shall retain the same validity, priority and extent that existed on the Petition Date. In the event that the collateral is surrendered at any time, said surrender shall operate as a full and final satisfaction of any and all obligations that the Debtor and third parties may have with the Class 1 Claimant.<br><br>Payments for Allowed Class 1 Claimants will begin the first full month, that is 30 days after the Claims Deadline. |
| Schedule A/B 47.5 | 2021 Chevy Express Box Truck | 2188 | Ally | $10,768.00 | Yes | Claimant shall be paid the Allowed Amount of its Set Allowed Secured Claim provided the Debtor will receive credit for any payments made during the case. Monthly payments will be in the amount of $175.93 principal and interest at 5.5% per annum. This monthly payment will be made monthly for seventy-two (72) consecutive months.<br><br>The holder of the Allowed claim herein shall retain its existing liens, privileges and encumbrances, at the value provided for in this Plan, but shall retain the same validity, priority and extent that existed on the Petition Date. In the event that the collateral is surrendered at any time, said surrender shall operate as a full and final satisfaction of any and all obligations that the Debtor and third parties may have with the Class 1 Claimant.<br><br>Payments for Allowed Class 1 Claimants will begin the first full month, that is 30 days after the Claims Deadline. |
| Schedule A/B 47.6 | 2021 Chevy Express KUV | 0786 | GM Financial | $18,769.00 | Yes | Claimant shall be paid the Allowed Amount of its Set Allowed Secured Claim provided the Debtor will receive credit for any payments made during the case. Monthly payments will be in the amount of $306.55 principal and interest at 5.5% per annum. This monthly payment will be made monthly for seventy-two (72) consecutive months.<br><br>The holder of the Allowed claim herein shall retain its existing liens, privileges and encumbrances, at the value provided for in this Plan, but shall retain the same validity, priority and extent that existed on the Petition Date. In the event that the collateral is surrendered at any time, said surrender shall operate as a full and final satisfaction of any and all obligations that the Debtor and third parties may have with the Class 1 Claimant.<br><br>Payments for Allowed Class 1 Claimants will begin the first full month, that is 30 days after the Claims Deadline. |

| Schedule A/B 47.7 | 2022 GMC Savanna Box Truck | 9623 | GM Financial | $13,000.00 | Yes | Claimant shall be paid the Allowed Amount of its Set Allowed Secured Claim provided the Debtor will receive credit for any payments made during the case. Monthly payments will be in the amount of $212.39 principal and interest at 5.5% per annum. This monthly payment will be made monthly for seventy-two (72) consecutive months.<br><br>The holder of the Allowed claim herein shall retain its existing liens, privileges and encumbrances, at the value provided for in this Plan, but shall retain the same validity, priority and extent that existed on the Petition Date. In the event that the collateral is surrendered at any time, said surrender shall operate as a full and final satisfaction of any and all obligations that the Debtor and third parties may have with the Class 1 Claimant.<br><br>Payments for Allowed Class 1 Claimants will begin the first full month, that is 30 days after the Claims Deadline. |
| Schedule A/B 47.8 | 2022 GMC Box Truck | 2603 | Ally | $13,000.00 | Yes | Claimant shall be paid the Allowed Amount of its Set Allowed Secured Claim provided the Debtor will receive credit for any payments made during the case. Monthly payments will be in the amount of $212.39 principal and interest at 5.5% per annum. This monthly payment will be made monthly for seventy-two (72) consecutive months.<br><br>The holder of the Allowed claim herein shall retain its existing liens, privileges and encumbrances, at the value provided for in this Plan, but shall retain the same validity, priority and extent that existed on the Petition Date. In the event that the collateral is surrendered at any time, said surrender shall operate as a full and final satisfaction of any and all obligations that the Debtor and third parties may have with the Class 1 Claimant.<br><br>Payments for Allowed Class 1 Claimants will begin the first full month, that is 30 days after the Claims Deadline. |
| Schedule A/B 47.9 | 2022 GMC Savanna Box Truck | 0795 | GM Financial | $13,000.00 | Yes | Claimant shall be paid the Allowed Amount of its Set Allowed Secured Claim provided the Debtor will receive credit for any payments made during the case. Monthly payments will be in the amount of $212.39 principal and interest at 5.5% per annum. This monthly payment will be made monthly for seventy-two (72) consecutive months.<br><br>The holder of the Allowed claim herein shall retain its existing liens, privileges and encumbrances, at the value provided for in this Plan, but shall retain the same validity, priority and extent that existed on the Petition Date. In the event that the collateral is surrendered at any time, said surrender shall operate as a full and final satisfaction of any and all obligations that the Debtor and third parties may have with the Class 1 Claimant.<br><br>Payments for Allowed Class 1 Claimants will begin the first full month, that is 30 days after the Claims Deadline. |
| Schedule A/B 47.10 | 2024 Silverado 2500 HD | 4956 | Chase | $49,400.00 | Yes | Claimant shall be paid the Allowed Amount of its Set Allowed Secured Claim provided the Debtor will receive credit for any payments made during the case. Monthly payments will be in the amount of $807.09 principal and interest at 5.5% per annum. This monthly payment will be made monthly for seventy-two (72) consecutive months.<br><br>The holder of the Allowed claim herein shall retain its existing liens, privileges and encumbrances, at the value provided for in this Plan, but shall retain the same validity, priority and extent that existed on the Petition Date. In the event that the collateral is surrendered at any time, said surrender shall operate as a full and final satisfaction of any and all obligations that the Debtor and third parties may have with the Class 1 Claimant.<br><br>Payments for Allowed Class 1 Claimants will begin the first full month, that is 30 days after the Claims Deadline. |
| Schedule A/B 47.11 | 2022 Nissan Armada | 1425 | TD Auto | $26,800.00 | Yes | Claimant shall be paid the Allowed Amount of its Set Allowed Secured Claim provided the Debtor will receive credit for any payments made during the case. Monthly payments will be in the amount of $437.86 principal and interest at 5.5% per annum. This monthly payment will be made monthly for seventy-two (72) consecutive months.<br><br>The holder of the Allowed claim herein shall retain its existing liens, privileges and encumbrances, at the value provided for in this Plan, but shall retain the same validity, priority and extent that existed on the Petition Date. In the event that the collateral is surrendered at any time, said surrender shall operate as a full and final satisfaction of any and all obligations that the Debtor and third parties may have with the Class 1 Claimant.<br><br>Payments for Allowed Class 1 Claimants will begin the first full month, that is 30 days after the Claims Deadline. |

| Schedule A/B 47.12 | 2024 Ford F250 | 3889 | Chase | $49,000.00 | Yes | Claimant shall be paid the Allowed Amount of its Set Allowed Secured Claim provided the Debtor will receive credit for any payments made during the case. Monthly payments will be in the amount of $800.56 principal and interest at 5.5% per annum. This monthly payment will be made monthly for seventy-two (72) consecutive months.<br><br>The holder of the Allowed claim herein shall retain its existing liens, privileges and encumbrances, at the value provided for in this Plan, but shall retain the same validity, priority and extent that existed on the Petition Date. In the event that the collateral is surrendered at any time, said surrender shall operate as a full and final satisfaction of any and all obligations that the Debtor and third parties may have with the Class 1 Claimant.<br><br>Payments for Allowed Class 1 Claimants will begin the first full month, that is 30 days after the Claims Deadline. |